UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| AMERICAN FAMILY MUTUAL | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14 CV 46 |
| | ) |
| DUSTIN McCOWAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on Defendant Joseph McCowan's motion to certify a question of state law to the Indiana Supreme Court. (DE # 60.) Defendants William and Sandra Bach (the "Bachs") join McCowan's motion and provide their own response in support of the motion to certify. (DE # 63.) Plaintiff American Family Mutual Insurance Company ("American Family") opposes the motion. (DE # 62.) For the reasons stated below, the motion to certify will be granted and this court will certify a question to the Indiana Supreme Court.

## I. BACKGROUND

*A. Procedural Background*

The Bachs were the parents of Amanda Bach. Amanda died on September 16, 2011, as a result of a gunshot wound. (DE ## 12 at 3, 46-5 at 2.) On February 26, 2013, Defendant Dustin McCowan was convicted of the murder of Amanda. (DE # 46-3.)

On March 28, 2013, the Bachs filed a lawsuit against Dustin and his father, Defendant Joseph McCowan, in the Porter County Superior Court. (DE # 46-5.) In the

lawsuit, the Bachs allege that Dustin McCowan negligently, carelessly, recklessly, and/or intentionally shot Amanda Bach. (*Id*. at 3.) They also allege Joseph McCowan negligently failed to secure his firearms, one of which was used to shoot Amanda Bach. (*Id*. at 4.)

At the time of Amanda's death, Dustin resided at the household of his parents: Amy and Joseph McCowan. (DE # 46-7 at 6.) American Family issued a homeowners policy of insurance (the "Policy") to Amy and Joseph McCowan for their residence in Valparaiso, Indiana. (DE # 46-1.) The Policy was in force on the date of the Amanda's death. (*Id*.) Notably, the Policy—written by American Family—contains certain exclusions from liability coverage:

> Coverage D— Personal Liability and Coverage E— Medical Expense do not apply to:
>
> **10. Intentional Injury**. We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of the insured.
>
> * * *
>
> **17. Violation of Law**. We will not cover bodily injury or property damage arising out of . . . violation of any criminal law for which any insured is convicted.

(DE # 46-1 at 14.)

On February 14, 2014, American Family filed a complaint against Dustin McCowan, Joseph McCowan, and the Bachs in this court. (DE # 1.) American Family seeks a declaratory judgment stating, in essence, that it has no obligations under the

Policy as to the actions of Dustin and Joseph McCowan which are the subject of the lawsuit filed by the Bachs. (*See id.*)

   B.   *Summary Judgment*

On July 31, 2015, American Family moved for summary judgment in this court. (DE # 44.) In an order dated February 16, 2017, the court granted summary judgment as to Dustin McCowan, based on the finding that liability coverage for Dustin was excluded under the violation of law exclusion. (DE # 59 at 6.) Therefore, the remaining issues in this matter relate only to liability coverage for Joseph McCowan.

As to Joseph McCowan, American Family argued, in sum, that even if Joseph did cause an injury through his own negligent actions, his liability coverage would be excluded under the Policy as a matter of law, due to Dustin's actions. (*See* DE # 45 at 10–20.) The Bachs disagreed and specifically cited the Indiana Supreme Court's holding in *Frankenmuth Mutual Insurance, Co. v. William*, 690 N.E.2d 675 (Ind. 1997) in support of their argument. In *Frankenmuth*, the Indiana Supreme Court specifically examined whether the intentional acts of one insured preclude coverage for the negligent acts of a co-insured. *Id*. The facts of that case involved a man who intentionally molested a child, while his wife committed only negligence. *Id*. at 676, 679. Although the husband and wife were co-insureds under the same policy, the Indiana Supreme Court concluded that the policy's "intentional act exclusion" did not apply to her negligence. *Id*. at 677, 679.

In its order on the motion for summary judgment, this court applied the holding of *Frankenmuth* while discussing the Policy's intentional injury exclusion and whether it should apply to bar coverage for Joseph McCowan. The court concluded that "[a]t the very least, *Frankenmuth* . . . support[s] the Bachs' assertion . . . that the intentional injury exclusion would not preclude coverage" as to Joseph McCowan. (DE # 59 at 9.)

The court also discussed whether it should apply the holding of *Frankenmuth* to also bar the applicability of the violation of law exclusion, as to Joseph McCowan. (*See id*. at 8–9.) In referencing conflicting District Court opinions, the court noted that the exact scope of *Frankenmuth*'s holding appeared to be unsettled. (*See id*. at 9–10.) Thus, the court ultimately chose not to apply *Frankenmuth*'s holding to the violation of law exclusion, at that time. (*Id*.)

As a result, the court denied the motion for summary judgment as to Joseph McCowan. (*Id*. at 10.) But, in the same order, the court also moved for summary judgment, *sua sponte*, "on the question of whether summary judgment is appropriate as to Joseph McCowan under the violation of law exclusion." (*Id*.) This was done, in part, to give the parties a further opportunity to provide briefing on the scope of the holding of *Frankenmuth*.

On March 5, 2017, rather that filing a brief regarding the *sua sponte* motion, Joseph McCowan filed a new motion to certify a question of state law to the Indiana Supreme Court. (DE # 60.) The court previously stayed the briefing deadlines on the motion for summary judgment and will now address the motion to certify.

## II.     CERTIFICATION

The Indiana Rules of Appellate Procedure allow "any federal district court"[1] to "certify a question of Indiana law to the Supreme Court when it appears that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. R. App. P. 64(A). Either party may request that a federal court certify a question of state law, and the decision to grant or deny a motion to certify is discretionary with the district court. *United Farm Bureau Mut. Ins. Co. v. Metro Human Relations Comm'n*, 24 F.3d 1008, 1015, n.10 (7th Cir. 1994).

Joseph McCowan proposes that the court pose the following question to the Indiana Supreme Court:

> Does an insurance policy liability exclusion denying coverage for "bodily injury . . . arising out of . . . violation of any criminal law for which any insured is convicted" preclude the duty to defend and indemnify a co-insured who was not convicted, and is only sued for negligence?

(DE # 60 at 1.) Meanwhile, the Bachs propose a broader, but similar, question covering both the intentional injury and violation of law exclusions:

> [W]hether the severability provision in [the Policy] serves to provide a duty to defend and indemnify an insured being sued only for negligence, notwithstanding the intentional or criminal act of another insured.

---

[1] American Family argues that this district court lacks the power to certify questions to the Indiana Supreme Court because Indiana Code 33-24-3-6(1) does not explicitly provide such a power to the district courts. (DE # 62 at 2.) Although that specific statute does not provide the power to district courts, Indiana Rule of Appellate Procedure 64 clearly provides such a power, and American Family has provided no reason for the court to disregard that rule.

(DE # 63 at 4.) The Bachs, unlike McCowan, mention the Policy's severability clause in their proposed question. The severability clause in the Policy says "[t]he insurance applies separately to each insured." (DE # 1-1 at 15.) According to the defendants, this severability clause is the underlying reason why the court must determine the applicability of each exclusion as to the first insured (Joseph McCowan) completely independently from the actions of his co-insured (Dustin McCowan).

Regardless, although these questions are worded differently, they both ask essentially the same question: whether the intentional or criminal acts of Dustin McCowan should be considered when determining whether the policy's exclusions apply to the coverage of Joseph McCowan. In order to determine whether such a question should be submitted to the Indiana Supreme Court, the court will first look to see if there is any clear controlling Indiana precedent.

*Frankenmuth* is the Indiana Supreme Court precedent most closely related to this issue. The insurance policy in *Frankenmuth*, contained an exclusion for personal injuries "caused intentionally by or at the discretion of any insured." 690 N.E.2d at 678. As stated above, the court in *Frankenmuth* concluded that the intentional act exclusion did not apply to the negligent co-insured's conduct. *Id*. The *Frankenmuth* decision, itself, does not discuss any severability clause in reaching its conclusion. Rather it supports its holdings by reasoning that the one insured's "negligence caused an injury—exposure to [risk]—that must be considered separately from the injuries resulting from the [intentional act] itself." *Frankenmuth*, at 690 N.E.2d at 679. Thus, despite not mentioning

6

a severability clause, *Frankenmuth* also supports the notion that courts should look at each co-insureds' conduct separately when analyzing a policy's exclusions.

Although *Frankenmuth*'s holding only explicitly applies to intentional act/injury exclusions, its holding has been extended to cover other exclusions by another judge in this district. *See American Family Mut. Ins. Co. v. Bower*, 752 F. Supp. 2d 957, 960 (N.D. Ind. 2010). In *Bower*, the relevant insurance policy was an American Family policy containing the exact same language as the McCowans' Policy in the sections outlining personal liability coverage, the intentional injury exclusion, and the violation of law exclusion. *Id*. at 962, 965. Both the policy in *Bower* and the Policy in the case at hand also contain identical "sexual molestation exclusions." (DE # 46-1 at 13); *Bower*, 752 F. Supp. 2d at 965. After analyzing the *Frankenmuth* opinion, the court in *Bower* found no reason why *Frankenmuth*'s reasoning should not be extended to also cover the violation of law exclusion and the sexual molestation exclusion. *Bower*, 752 F. Supp. 2d at 970 ("Indeed, it would make little sense to delineate among the three exclusions . . . ."). All together, the court held "under Indiana law the sexual molestation, the criminal law, or the intentional acts exclusions in American Family's policies do not apply to preclude coverage for the alleged negligent acts of a co-insured." *Id*. The *Bower* decision is not itself a statement of Indiana law, but it does serve as a useful interpretation of the scope of the *Frankenmuth* decision.

The other pertinent Indiana case cited by the parties[2] is *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574 (Ind. 2013). In that case, a victim was in the care of one co-insured while abuse or molestation occurred. *See id*. at 580. The policy in that case contained an exclusion barring coverage for abuse or molestation of someone in the care of "any insured." *Id*. at 581. The Indiana Supreme Court noted that the word "any" appeared in the policy's molestation exclusion, but not in certain other exclusions in the policy. *Id*. at 581, n.10. The court reasoned that distinction in wording must mean something with respect to the molestation exclusion. Thus, since one insured had the victim in its care, it meant that coverage was excluded as to all insureds. *Id*.

The *Holiday Hospitality* decision does not mention *Frankenmuth*. However, their holdings seem to be potentially inconsistent. Both cases involve exclusions with the language "any insured" yet in one case the exclusion was read separately as to each co-insured and in the other it was not. Perhaps significantly, *Holiday Hospitality* does not specifically relate to intentional act exclusions. It is also possible that one of these decisions could be distinguished from the other based on some specific facts from the respective cases. However, since the decisions do not specifically address one another, and because the reasoning provided in each opinion regarding these issues is relatively

---

[2] American Family also cites *Deeter v. Ind. Farmers Mut. Ins. Co.*, 999 N.E.2d 82, 86 (Ind. Ct. App. 2013). However, Joseph McCowan correctly points out that *Deeter* involved a first-party insurance claim, rather than a third-party claim. *See id*.; (*see also* DE # 64 at 2.).

8

brief, it is difficult for to this court to determine where such factual distinctions should be drawn.³

Certifying a question would allow the Indiana Supreme Court to clarify the holding of *Frankenmuth*, limit it, distinguish it from *Holiday Hospitality*, or expand upon it as it sees fit; for instance, the court could articulate whether *Frankenmuth* is limited to cases involving certain facts, whether it applies to all intentional act/injury exclusions, or whether it applies to other types of exclusions, as well. Without such clarification, this court would be forced to rule on an issue of Indiana state law that is defined by two seemingly divergent opinions, neither of which address the other. Accordingly, the court finds there to be no clear controlling Indiana precedent.

Having concluded there is no clear precedent, the court will now examine the other relevant factors to the certification decision. Certification "may be appropriate where [1] the case concerns a matter of vital public concern, [2] where the issue will likely recur in other cases, [3] where resolution of the question to be certified is outcome determinative of the case, and [4] where the state supreme court has yet to have an opportunity to decide . . . the issue." *Robertson v. The Med. Assurance Co., Inc.*, No. 2:13-CV-107 JD, 2014 WL 2556236, at * 6 (N.D. Ind. June 5, 2014) (citing *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 378 (7th Cir. 2010) (internal quotation marks omitted).

---

³ American Family argues that *Frankenmuth* can be distinguished because it is a case involving issues of collateral estoppel. This is possible, however, the underlying reasoning for the ultimate conclusions in *Frankenmuth* are not clear enough for this court to make such a determination with certainty.

9

As to the first of these factors, American Family argues that this is not a matter of public concern because "[t]here is no recognizable public class that would be affected by this question of liability coverage to a person who provided the gun to a murderer." (DE # 62 at 8.) American Family views this issue too narrowly. Although the case at hand has facts involving guns, the question to be certified is broader since it relates to the interpretation of any exclusion clause in light of the conduct of a co-insured. The question here is a matter of vital public concern, as it is important to the public's understanding of common clauses in insurance policies.

Second, this issue is likely to recur in other cases. In its order on summary judgment, the court noted three prior decisions involving exclusion clauses and the conduct of co-insureds: *Frankenmuth*, *Bower*, and *Westfield Ins. Co. v. Hill*, 790 F. Supp. 2d 855 (N.D. Ind. 2011). In particular, *Bower* featured not only the same issue but also the same plaintiff and identical insurance policy language.

Given the similarity of this case to *Bower*, it is noteworthy that the judge in that case considered certifying the *same* issue to the Indiana Supreme Court that this court does here. 752 F. Supp. 2d at 969, n.9 ("The undersigned contemplated at great length certifying these issues to the Indiana Supreme Court.") The only reason the court did not ultimately certify in *Bower* is because the court determined that resolution of the certified questions would not be outcome determinative, due to remaining genuine issues of material fact. (*Id*.) Here, there are no such remaining issues of fact and the certified questions will determine the outcome of the case.

On the last factor, American Family says that the Indiana Supreme Court had an opportunity to address this issue in *Holiday Hospitality*. (DE # 62 at 9–10.) While the Indiana Supreme Court took its opportunity in *Holiday Hospitality* to address severability and molestation exclusions, that case did not involve the exact exclusions which are relevant to the case at hand. In particular, this means the Indiana Supreme Court was not obligated to address its decision's apparent contradiction with *Frankenmuth* as it relates to intentional act exclusions. Certifying the question will give the court the opportunity to address this conflict and clarify an unclear area of law, thus contributing to the development of the state law of Indiana.

III.   **CONCLUSION**

For the foregoing reasons, the court **GRANTS** the motion to certify (DE # 60) and certifies the following question to the Indiana Supreme Court:

> Under Indiana law, does the American Family Policy serve to provide a duty to defend and indemnify an insured being sued only for negligence, notwithstanding any intentional or criminal acts of a co-insured which result in the exclusion of coverage for that co-insured, in light of the severability clause in the Policy?

Should the Indiana Supreme Court accept the certification of this question, it of course has the discretion to reformulate the question as it sees fit, and nothing in this opinion is meant to limit the scope of the inquiry undertaken by the Indiana Supreme Court. *See Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 431 (7th Cir. 2012).

Consistent with Indiana Rule of Appellate Procedure 64(B) the Clerk is **DIRECTED** to forward the following to the Clerk of the Indiana Supreme Court: (1) a

11

copy of this order; (2) a copy of the case docket, including the names of the parties and their counsel; (3) the complaint (DE # 1); (4) the motion for summary judgment and related briefing (DE ## 44–46, 50–51, 54); and (5) this court's February 16, 2017, order (DE # 59).

**SO ORDERED.**

Date: March 30, 2018

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT
